UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLANET BINGO, LLC,

       Plaintiff,

                                                  File No. 1:12-CV-219

v.

                                                  HON. ROBERT HOLMES BELL

VKGS, LLC,

       Defendant.
_____/

## **O P I N I O N**

This matter is before the Court on Defendant VKGS, LLC's motion for leave to file answer to complaint, amended affirmative defenses, and amended counterclaims. (Dkt. No. 27.) On March 7, 2012, Planet Bingo, LLC sued VKGS for infringement of U.S. Patent Nos. 6,398,646 (the '646 patent) and 6,656,045 (the '045 patent). (Dkt. No. 1.) Previously, this Court denied without prejudice VKGS's motion for summary judgment on invalidity grounds. (Dkt. No. 34.) The present motion will be granted in part and denied in part for the following reasons.

### I.

The '646 patent is directed at an automated method and system for managing a Bingo game while allowing a repeat player to play the same sets of numbers in multiple games of Bingo. (Dkt. No. 1, Ex. A, '646 Patent, Abstract.) Essentially, the system allows (1) players to select their own numbers and store them for later use, (2) players to print off game tickets at the Bingo playing site with those pre-selected numbers, and (3) the Bingo hall to track and

validate these sets of numbers. (*Id.*) The '045 patent is similar. It is directed to an automated method and system for storing preselected Bingo numbers which allow a player to play the same sets of Bingo numbers in multiple sessions. (Dkt. No. 1, Ex. B, '045 Patent, Abstract.) The player can pay to purchase the sets of Bingo numbers and also input them into the computer to verify a winning set of Bingo numbers. (*Id.*)

On July 9, 2012, the Court scheduled a *Markman* hearing for April 18, 2013, and set deadlines for disclosure. (Dkt. No. 16.) The present motion was timely brought on September 28, 2012. (Dkt. No. 21.)

## II.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the Court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Defendant seeks the Court's leave to amend its affirmative defenses and counterclaims to include an affirmative defense that subject matter jurisdiction is lacking and counterclaims of declaratory judgment of unenforceability as to both the '045 and '646 patents due to inequitable conduct in the prosecution of the '045 patent. Tied to these counterclaims, Defendant also seeks to add an affirmative defense of invalidity due to inequitable conduct as to both patents.

**A. Affirmative Defense of Lack of Subject Matter Jurisdiction**

First, Defendant seeks to add the affirmative defense of lack of subject matter jurisdiction – the proposed Eighth Affirmative Defense – because the United States Patent and Trademark Office ("USPTO") lists Melange Computer Services, Inc. as the owner of both the '646 and '045 patents. To have standing in a patent infringement suit, a plaintiff must be the patentee or a successor in title to the patent, or, in the alternative, be the exclusive licensee suing with the patentee. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). Defendant thus alleges that first, Plaintiff is not the patentee (Melange is), and second, Plaintiff is not the exclusive licensee of either patent (Plaintiff licenses the patents in suit to third parties) and is not suing with the patentee.

Additionally, Defendant contends that it did not have the information necessary to bring the affirmative defense of lack of subject matter jurisdiction initially. In support, Defendant cites interrogatory responses by Plaintiff that it received after filing the initial affirmative defenses. (*See* Dkt. No. 27, at 3.) Defendant offers no arguments opposing this proposed amendment, and the Court does not believe it is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. Thus, the Court will grant Defendant's motion to the extent it pertains to amending the affirmative defenses to include lack of subject matter jurisdiction.

**B. Counterclaims Alleging Inequitable Conduct**

Second, Defendant seeks to add counterclaims for declaratory judgment of

unenforceability – Counts V and VI of the amended counterclaims – due to inequitable conduct in the prosecution of the '045 patent. Tied to these proposed counterclaims, Defendant seeks to add the proposed Seventh Affirmative Defense of invalidity due to inequitable conduct. In particular, Defendant alleges that counsel for Plaintiff's predecessor in interest, Melange, (Ian McLeod and Mary Moyne of the law firm McLeod & Moyne) and the alleged inventors of the '045 patent intentionally violated their duty of disclosure in prosecuting the '045 patent. Defendant alleges that they failed to disclose the prior art of Fioretti (U.S. Patent No. 5,351,970) and the fact that, in a patent application by Melange virtually identical to the application that resulted in the '045 patent, the Canadian Intellectual Property Office ("CIPO") rejected, as invalid on the ground of obviousness in light of Fioretti, claims alleged to teach "control identifiers." Days before this CIPO rejection based on Fioretti, this "control identifiers" element was directly cited by the USPTO examiner as missing in the prior art and the reason the '045 patent recited patentable subject matter. Defendant alleges that the firm McLeod & Moyne was connected to this CIPO prosecution and thus knew of Fioretti and the CIPO rejection (which occurred during the pendency of the '045 patent application) and intentionally failed to disclose them to the U.S. patent examiner.

### 1. The '045 Patent Counterclaim

Plaintiff contends that leave to add the counterclaim regarding the '045 patent – Count V of the amended counterclaims – should be denied on the basis of futility. *See Crawford*, 53 F.3d at 753. "A proposed amendment is futile if the amendment could not withstand a

Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *see also Riverview Health Inst. LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The Sixth Circuit imposes a heightened pleading standard for allegations of inequitable conduct:

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b).
>
> . . .
>
> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-29 (Fed. Cir. 2009). Thus, *Exergen* requires a defendant to identify the "who," "what," "when," "where," and "how" of the alleged inequitable conduct, in addition to sufficient allegations of fact to create a reasonable inference of scienter.

Plaintiff contends that Defendant failed to satisfy its pleading burden as to the "how,"

5

"what," "when," and scienter requirements of *Exergen*. First, Plaintiff argues that Defendant has not alleged "how" any of the named inventors would have been aware of either Fioretti or the CIPO's rejection. (Dkt. No. 31, at 9.) However, *Exergen*'s "how" requirement refers to how the patent examiner would have used the withheld information. *See, e.g.*, *Somanetics Corp. v. CAS Med. Sys., Inc.*, No. 09-13110, 2010 WL 2178836, at *7 (E.D. Mich. May 26, 2010); *Jordan Acquisition Group, L.L.C. v. TSI Inc.*, No. 10-11988, 2011 WL 2650491, at *2 (E.D. Mich. July 6, 2011); *Everlight Elecs. Co., Ltd. v. Nichia Corp.*, No. 12-CV-11758, 2012 WL 5389696, at *3 (E.D. Mich. Nov. 2, 2012). It requires a counterclaimant to show "the causal link between the activity alleged and the granting of the patents in suit." *McKechnie Vehicle Components USA, Inc. v. Lacks Ind., Inc.*, No. 09-CV-11594, 2010 WL 4643081, at *5 (E.D. Mich. Nov. 9, 2010).

In the proposed amended counterclaims, Defendant has sufficiently pleaded how the patent examiner would have used the undisclosed information. Notably, Defendant quoted the patent examiner's statement in an Office Action that the '045 patent recited allowable subject matter because "[t]he prior art of record . . . do not teach the feature of assigning a control identifier to each set of Bingo numbers." (Dkt. No. 27, Ex. 1, Am. Countercl, ¶ 30.) This "feature" was found obvious by the CIPO in light of Fioretti. (*Id.* at ¶ 38.) Thus, the amended pleading shows that the patent examiner would have used the disclosure of Fioretti and the CIPO rejection to find the '045 patent invalid on the ground of obviousness.

Plaintiff also contends that Defendant failed to satisfy the "what" requirement because

it did not allege that the named inventors had actual knowledge of Fioretti or the CIPO rejection. (Dkt. No. 31, at 9.) Once again, this misconstrues *Exergen*. The "what" requirement mandates identification of the material misrepresentation or omission and what claims it impacted. *See, e.g.*, *Dura Operating Corp. v. Magna Intern.*, No. 10-1156, 2011 WL 869372, at *11 (E.D. Mich. Mar. 10, 2011); *McKechnie*, 2010 WL 4643081 at *4. Defendant satisfies this burden because it identifies what the material omission was – Fioretti and the CIPO rejection – and which claims of the '045 patent it impacted – those reciting control identifiers. (Dkt. No. 27, Ex. 1, Am. Countercl., ¶¶ 21-51.)

Similarly, Plaintiff contends that Defendant failed to satisfy the "when" requirement because it did not allege when any of the implicated attorneys communicated the existence of Fioretti or the CIPO rejection to the named inventors. As before, this misconstrues *Exergen*. The "when" requirement requires an allegation of when the alleged inequitable conduct occurred. *See, e.g.*, *Dura Operating Corp.*, 2011 WL 869372 at *11; *McKechnie*, 2010 WL 4643081 at *4. Defendant satisfied this burden because it identified when the alleged inequitable conduct occurred. (Dkt. No. 27, Ex. 1, Am. Countercl., ¶¶ 39-48.)

Lastly, Plaintiff contends that Defendant failed to satisfy the two-part scienter requirement, first as to McLeod and Moyne, and second as to the named inventors. Plaintiff applies too strict of a standard in reaching this conclusion, seeking this Court to require probability or proof. Defendant does not have to prove knowledge and specific intent in its pleadings. Instead, *Exergen* requires "sufficient allegations of underlying facts from which

a court may reasonably infer" knowledge of the withheld material and specific intent to deceive the patent examiner. 575 F.3d at 1328. "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Id.* at 1329 n.5. Plaintiff's argument that the Court must find that the intent to deceive is the "single most reasonable inference to be drawn" is improper at this stage. (Dkt. No. 31, at 11 (citing *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).) *Therasense* involved review of a district court decision regarding inequitable conduct on the merits, not a 12(b)(6) analysis as here. At this pleading stage, all that is required is plausibility based on the facts alleged in the pleading. *See Exergen*, 575 F.3d at 1329 n.5. The Court will apply this standard first to the pleadings as they relate to the attorneys and then to the pleadings as they relate to the inventors.

Defendant pleaded facts alleging that McLeod and Moyne were involved in the CIPO prosecution that invalidated virtually identical claims on the ground of obviousness in light of Fioretti and thus knew of Fioretti and the CIPO rejection and had a specific intent to deceive the U.S. patent examiner. First, Defendant pleaded facts showing that the CIPO patent application was initiated by Melange (i.e. the same client) and was identical to the patent application that resulted in the '045 patent. (Dkt. No. 27, Ex. 1, Am. Countercl., ¶¶ 36-37.) Second, Defendant pleaded facts showing that the patent application before the CIPO was filed by McRae & Co., a Canadian law firm, on behalf of McLeod & Moyne. (*Id.* at ¶ 38.) Third, Defendant pleaded facts showing that while the '045 patent application was

still pending (and after the patent examiner had indicated that patentable subject matter hinged on "control identifiers"), the CIPO examiner on multiple occasions rejected claims identical to those at issue in the '045 patent on the ground of obviousness in light of Fioretti and disclosed these rejections to McRae & Co. (*Id.* at ¶¶ 39-51.) The Court finds it plausible, based on these pleaded facts, that McLeod and Moyne, prosecuting the same invention for the same client as the CIPO prosecution, were monitoring the CIPO prosecution (which they referred to McRae & Co.) and as a result knew about Fioretti and the CIPO rejection. Similarly, because the CIPO rejection involved the same invention and same client at issue in the application for the '045 patent, the Court also finds it plausible based on the pleaded facts that McLeod and Moyne chose not to disclose Fioretti with the specific intent to deceive the U.S. patent examiner. Thus, Defendant has met its pleading burden in regard to inequitable conduct of McLeod and Moyne.

However, the reasonable inferences about McLeod and Moyne drawn from the three sets of pleaded facts just discussed do not extend to the named inventors. Defendant's sole reference in the pleadings to the knowledge of the inventors is that "[a]t least attorneys McLeod and Moyne, if not also the alleged inventors, were fully aware . . ." (*Id.* at ¶ 60.) While this was sufficient to plead knowledge on the part of the attorneys based on the pleaded facts regarding their close connection to the CIPO prosecution, no such underlying facts were pleaded in regard to the inventors. Moreover, Defendant's argument in its brief is that "on information and belief" the alleged inventors were aware of Fioretti and the CIPO

9

rejection. (Dkt. No. 27, at 7.) The bare statement of "information and belief," without any pleaded facts implicating the inventors, is not sufficient to constitute pleaded facts supporting a reasonable inference of scienter (i.e. a plausible inference of scienter that logically flows from the pleaded facts).

Similarly, this phrase, "information and belief," is used in the pleadings to plead intent to deceive on the part of both the attorneys and inventors. (Dkt. No. 27, Ex. 1, Am. Countercl., ¶ 61.) As with the knowledge pleading requirement, this is sufficient to plead intent on the part of the attorneys because of the pleaded facts concerning the close connection of the attorneys to the CIPO prosecution and the pleaded fact that within days of the CIPO examiner highlighting the control identifiers in Fioretti, the U.S. examiner stated the reason the '045 patent recited patentable subject matter was the absence of any prior art reciting control identifiers. But there are no such facts establishing a connection of the named inventors to the CIPO prosecution or establishing that the named inventors were closely involved in the prosecution of the '045 patent. Thus, "information and belief," without any related pleadings involving the inventors, is insufficient to create a reasonable inference of intent on the part of the inventors. Because there are insufficient allegations of underlying facts from which a court may reasonably infer that the inventors had knowledge of the withheld material and a specific intent to deceive, Defendant cannot make out a claim that the inventors engaged in inequitable conduct.

Plaintiff does not challenge that Defendant has adequately pleaded the "who" and

"where" of the inequitable conduct, the only two remaining requirements of *Exergen*, and the Court agrees that Defendant met its pleading burden as to those two requirements. Thus, Defendant has adequately pleaded inequitable conduct as to McLeod and Moyne, and the addition of Count V of the amended counterclaims would not be futile as it pertains to the two attorneys. Because the Court does not believe it is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile, it finds that the addition of the counterclaim is appropriate under Rule 15(a)(2). However, the counterclaim as proposed (Dkt. No. 27, Ex. 1) includes allegations of inequitable conduct by the inventors which the Court finds would be futile.

### 2. The '646 Patent Counterclaim

Plaintiff also contends that leave to add the counterclaim regarding the '646 patent – Count VI of the amended counterclaims – should be denied on the basis of futility. This is because the alleged inequitable conduct took place after the issuance of the '646 patent. Defendant counters that a finding of inequitable conduct in the prosecution of one patent application applies with equal force to related patents in the same technology family.

"[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Therasense*, 649 F.3d at 1288-89 (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808-12 (Fed. Cir. 1990)). However, *Consolidated Aluminum Corp.* involved inequitable conduct during the prosecution of the *first-issued* patent in the technology family

at issue. The Federal Circuit has held that inequitable conduct during the prosecution of a *later-issued* patent does render previously-issued patents unenforceable: "this court's inequitable conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct." *Pharmacia Corp. v. PAR Pharm., Inc.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005) (holding that a previously-issued patent was not invalidated because inequitable conduct occurred in the prosecution of a later patent). "The fact that the later issued patents [during the prosecution of which inequitable conduct allegedly occurred] may relate in subject matter to the initial patent does not appear to be the kind of link relied upon by the Courts [to apply infectious inequitable conduct]." *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 609 F. Supp. 2d 1090, 1101 (E.D. Cal. 2009) (denying a motion to amend counterclaims as futile, which sought to challenge the enforceability of a previously-issued patent). *See also, e.g.*, *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 781 (N.D. Ill. 2010) ("Federal Circuit precedent makes clear that inequitable conduct associated with the prosecution of a later patent does not affect the enforceability of an earlier patent.")

Defendant has not pleaded any facts at all regarding inequitable conduct during the prosecution of the '646 patent. (*See* Dkt. No. 27, Ex. 1, Am. Countercl., ¶¶ 65-71.) Thus, because inequitable conduct in the prosecution of a later-issued patent does not render unenforceable a previously-issued patent, the proposed counterclaim is futile because it could not withstand a Rule 12(b)(6) motion to dismiss. *See Rose*, 203 F.3d at 420. Consequently, the Court denies leave to add Count VI of the amended counterclaims.

12

For the same reasons state above, the Court denies leave to add the Seventh Affirmative Defense as it pertains to Count VI and the '646 patent, but grants leave to add this affirmative defense as it pertains to Count V and the '045 patent.

### III.

The Court will grant Defendant's motion as to Count V of the amended counterclaims as it pertains to McLeod and Moyne, the proposed Seventh Affirmative Defense as it pertains to Count V of the amended counterclaims and the '045 patent, and the proposed Eighth Affirmative Defense. However, it will deny the motion as to Count V of the amended counterclaims as it pertains to the inventors, Count VI of the amended counterclaims in its entirety, and the proposed Seventh Affirmative Defense as it pertains to Count VI of the amended counterclaims and the '646 patent. Defendant shall file with the Court an "Answer to Complaint, Amended Affirmative Defenses, and Amended Counterclaims" consistent with this opinion.

An order consistent with this opinion will be entered.


Dated: November 14, 2012                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE

13