UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLANET BINGO, LLC,

       Plaintiff,

                                                    File No. 1:12-CV-219

v.

                                                    HON. ROBERT HOLMES BELL

VKGS, LLC,

       Defendant.
                                      /

## **O P I N I O N**

On March 7, 2012, Planet Bingo, LLC sued VKGS, LLC (d/b/a Video King) for patent infringement. This matter is before the Court for a *Markman* determination regarding claim construction of the disputed terms in Patent Nos. 6,398,646 (the '646 Patent) and 6,656,045 (the '045 Patent). Previously this Court denied without prejudice VKGS's motion for summary judgment, which argued that Planet Bingo's patents are invalid under 35 U.S.C. § 101 for failure to recite patentable subject matter. (Dkt. No. 34.)

### I.

The '646 Patent is directed at an automated method and system for managing a Bingo game while allowing a repeat player to play the same sets of numbers in multiple games of Bingo. (Dkt. No. 1, Ex. A, '646 Patent, Abstract.) Essentially, the system allows (1) players to select their own numbers and store them for later use, (2) players to print off game tickets at the Bingo playing site with those pre-selected numbers, and (3) the Bingo hall to track and validate these sets of numbers. (*Id.*) The '045 Patent is very similar. It is directed to an

automated method and system for storing preselected Bingo numbers which allow a player to play the same sets of Bingo numbers in multiple sessions. (Dkt. No. 1, Ex. B, '045 Patent, Abstract.)

## II.

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *Id.* A claim construction order dictates how the court will instruct the jury regarding the scope of a claim. *Id.*

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The court is also authorized to consider extrinsic evidence, such as expert testimony, dictionaries, and learned treatises. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).

Claim construction begins with the words of the claim. The words of the claim are

given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* The court begins its claim construction process by reviewing these same resources. *Id.* "The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Id.* at 1315 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998)). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. However, the Court must be mindful to avoid the danger of importing limitations from the specifications into the claim. *Id.* at 1323. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### III.

The parties seek construction of almost every phrase in the two patents. Before delving into specific arguments regarding each term, the Court will first address some of the common arguments.

Planet Bingo contends that all of VKGS's proposed constructions fail to mention the use of a computer. It argues that VKGS uses a dictionary to define all the terms and ignores the intrinsic evidence available, namely claim context, the specification and the prosecution history. The Court clearly understands this argument; claims must be construed in light of such intrinsic evidence. However, the Court believes that, in this case, Planet Bingo's argument is misplaced. The use of a computer is specified in the claims where intended. For example, Planet Bingo argues that the Court should construe both "storage" and "assignment" with reference to a computer. However, the claims specify when "storage" takes place in the memory of a computer. (*Compare* '646 Patent, Claims 1, 7 (specifying storage "in the memory of a computer" *with* '646 Patent, Claim 13 (not specifying where storage occurs).) The same is true for "assignment." (*Compare* '646 Patent, Claim 1 (specifying "assignment by the computer" *with* '646 Patent, Claim 13 (not specifying what/who does the assigning).) The reference to a computer in the claim context for Claims 1 and 7 but not 13 makes clear that the use of a computer is not built into the meaning of "storage" or "assignment."

Another common argument is VKGS's insistence that a human could perform all of the steps being performed by a computer. While the Court does not necessarily disagree with this argument, the matter is before the Court for claim construction and not invalidity on account of non-patentable subject matter. Thus, when performance in a claim *is* specifically limited to a computer, it must be construed that way even if VKGS is correct that technically

a human could do the performance as well.

The Court will proceed to address the disputed terms in three groups: (1) terms that are entitled to their ordinary meaning and will not be construed; (2) terms that need to be construed; and (3) one term that is indefinite.

**1. Terms/Phrases That *Will Not* be Construed**

The Court is only required to construe claim terms when the parties raise an "actual dispute." *See O2 Micro Int'l*, 521 F.3d at 1360. For many terms, the parties agree that they are entitled to their ordinary and customary meaning. However, they disagree as to what that meaning should encompass. As touched on above, Planet Bingo proffers very specific constructions that oftentimes fill in context already provided by the claim language, such as the use of a computer. VKGS, on the other hand, proffers generic, somewhat ambiguous constructions that substitute dictionary definitions for each term. There are also several terms where the parties do not agree that ordinary meaning applies, yet where they follow this same format in offering proposed constructions.

As discussed, the dispute over whether or not to include the use of a computer in construing each claim is not a meaningful dispute: the plain language of the claims provide for the use of a computer where intended. The remaining differences in the parties' proposed constructions of the following terms also fail to constitute actual dispute. These terms are not ambiguous as written. If this Court were to construe them using a dictionary or by substituting synonyms for each commonly-understood word, the Court's constructions would

likely be less precise and might be confusing to a jury. Accordingly, the Court finds that the following terms are entitled to their ordinary meaning and do not need to be construed:[1]

- "computer"; "programmable computer"

- "program"; "computer program"

- "storage of (or 'storing') the sets of Bingo numbers which are preselected by a player as a group" and variants

- "assignment . . . of (or 'assigning') . . . a player identifier" and variants

- "assigning a control identifier"

- "verify the winning set of Bingo numbers" and variants

- "system for managing a game of Bingo"

- "at least two sets (or 'preselected sets') of Bingo numbers" which are "preselected by a player"

- "retrieval of"; "retrieving"[2]

- "selection"

- "a number of sets of Bingo numbers selected for play in the selected game of Bingo is less than a total number of sets of Bingo numbers in the group."

- "receipt"; "printed receipt"; "output (or 'outputting') of a receipt"

---

[1] For the location of each of these terms in each patent and the parties' proposed constructions for each please see Appendix A.

[2] As discussed below, the Court distinguishes between these words, appearing in Claims 1, 7, 13, 19 of the '646 Patent and Claims 1, 5, 10, 17, 23 of the '045 Patent, and the phrase "selective retrieval" appearing in Claim 26 of the '646 Patent and Claim 15 of the '045 Patent. In response to VKGS's argument at the hearing that "retrieval" should be construed to require the retrieval of *all* the preselected sets of Bingo numbers, the Court notes that such a construction is unnecessary given the fact that what is being retrieved (i.e. the "group") is specified in each claim.

- "receiving"
- "player inputs the set(s) of Bingo numbers"
- "input and output terminal"
- "playing the game of Bingo" and variations
- "compared to the winning numbers"
- "control identifier . . . is erased"
- "portable terminal"; "portable Bingo terminal"
- "computer readable medium"
- "storing" the control identifier
- "display is received"; "displaying"
- "computer identification number"

If it becomes necessary at some future point in this litigation to construe one or more of these terms, the Court will do so at that time. However, because they appear to be entitled to their ordinary meaning, the Court declines to construe them at this time.

## 2. Terms/Phrases that *Will* be Construed

There is a meaningful dispute over the proper construction of the following terms, either because are not commonly used terms or because they are ambiguous as written. The Court will explain the parties' arguments for each before offering its construction.

**a. "player identifier" – '646 Patent, Claims 1, 7, 13, 19; '045 Patent, Claims 1, 5, 10, 17, 23**

VKGS proposes a construction that does not reference a computer and which suggests as an example, a user name and password. VKGS argues that the prior art and Canadian prosecution history teaches the use of a user name and password as a player identifier. However, there is no intrinsic evidence suggesting the use of a user name and password: at no point in the claims, specifications, or prosecution history is there reference to the use of a user name and password in relation to the '646 or '045 patents.

Planet Bingo prefers a construction that involves computer-generation. However, the Court will not construe "player identifier" as "a computer-generated designation unique to a player," as Planet Bingo prefers, because the involvement of a computer is specified in the plain language of the claims where intended. For example, Claim 1 of the '646 Patent separately provides for the use of a computer – "assignment by the computer of a player identifier," while Claim 7 of the '646 Patent omits this "by the computer" language. The inclusion in one claim and omission in another makes it clear that "computer-generated" is not built into the meaning of the isolated phrase "player identifier." Thus, the Court construes "player identifier" as "a designation unique to a player."

**b. "control number"; "control identifier"; and variants – '646 Patent, Claims 1, 7, 13, 19; '045 Patent, Claims 1, 5, 10, 23**

Planet Bingo's proposed construction includes the adjective "computer-generated." VKGS's proposed construction leaves out mention of a computer. As with "player identifier," the limitation that a "control number" is computer-generated is specified in the

"control number" language for some claims (e.g. '646 Patent, Claim 1) but not others (e.g. '646 Patent, Claim 13). Thus, "computer-generated" is not built into the meaning of "control number," and will not be implied to be by the Court.

However, because "control number" is not a usual phrase, the Court will construe it. In doing so, Planet Bingo urges the Court to adopt a construction that clarifies that the control number/identifier is "unique" to the set of numbers selected by a player for use in a Bingo game. This is supported by the specification. ('646 Patent, 2:40-42.) Thus, the Court construes "control number" as follows: "A number that is unique to each set of Bingo numbers selected by the player for play in a game of Bingo."

**c. "receipt validation number"; "validation number" – '646 Patent, Claims 15, 21; '045 Patent, Claims 1, 2, 25**

Planet Bingo proposes construing this term to account for a requisite sale to a player. Planet Bingo is correct that the specification for the '045 patent indicates that the validation number is assigned to a sale. ('045 Patent, 7:18-21.) However, that indication occurs in the preferred embodiment section, meaning that the "sale" limitation should not necessarily be assumed to be present in each claim. Indeed, the plain language of the claims indicates that this limitation is only present where explicitly specified. For example, Claim 1 of the '045 Patent discusses a prior sale before assignment of a validation number (9:25-27); however, no such sale or transaction is mentioned in Claim 25 of the '045 Patent (or in Claim 23, the independent claim on which Claim 25 depends). Thus, "unique to each sale" is not built into

9

the meaning of "validation number."

Planet Bingo also proposes construing the term to include the use of a computer. The specification for the '045 patent indicates that the validation number is assigned by a computer. ('045 Patent, 7:18-21.) However, as before, that indication only appears in the preferred embodiment section. No such limitation appears in the claims, which only indicate that a validation number exists and can be printed on a receipt and/or inputted into a computer. (*See* '646 Patent, Claims 15, 21; '045 Patent, Claims 1, 2, 25.) Thus, the Court will not include this limitation.

Last, because "receipt" is used to describe the location of the validation number in some cases, the Court does not need to separately define "receipt" or use it in construing "validation number." Thus, the Court construes "validation number" as "a number assigned to a set of Bingo numbers selected by a player."

**d. "output for verification"; "output of [a/the] verification" – '646 Patent, Claims 1, 6, 12; '045 Patent, Claims 14, 22**

Unsurprisingly, Planet Bingo prefers a construction that involves the use of a computer, while VKGS proposes a construction that does not reference a computer. Similar to the other disputed terms, the use of a computer in connection with "output for verification" and "output of [a/the] verification" is specified in the claim language itself, making it redundant for the Court to construe these terms with reference to a computer. For example, Claim 1 of the '646 Patent references the input of the control number into the computer to

10

get the output for verification. (9:15-18.) Similarly, Claim 14 of the '045 Patent references a printer, which is connected to a computer, printing the output of the verification. (11:49-52.) More importantly, a computer is only referenced in these claims in the sense that a computer *outputs* a winning set of Bingo numbers, whether through printing or another means; there is nothing in the claims implying, as Planet Bingo does, that the computer does the following two-step verification process: (1) comparing the set of numbers called during Bingo with the numbers selected by the player, and (2) indicating if there is a match. While the specification of the '646 Patent does indicate that the computer can do such a two-step verification process ('646 Patent, 8:29-33), this limitation occurs in the preferred embodiment section. Moreover, the specification never provides a definition for "output for verification" and there is no indication that the two-step process described in the specification is what is referred-to in the claims as "output for verification."

The Court also notes that the parties do not distinguish between the two variations of the phrase at issue ("output *for* verification vs. "output *of the* verification"), which is odd because the change in prepositions changes the ordinary meaning of the phrase. "For" implies that the verification will take place *after* output. "Of" implies that the output is the verification itself. However, the claims appear to use "output for verification" interchangeably with "output of the verification." For example, Claim 6 of the '646 Patent, a claim dependent on Claim 1, seems to be referring to the "output for verification" step of Claim 1 but calls it the "output of the verification"; the only change in Claim 6 is that this

11

output is printed. Thus, the Court finds that the two variations of the term should be construed the same despite the change in prepositions. Because Claim 1 of the '646 Patent is the only independent claim at issue for these terms, the Court will construe the term in a manner that comports with the use of "for" that occurs in that claim: "The displaying or production of an item for the purpose of establishing truth, accuracy, or reality."

**3. Term That is Indefinite**

The last term offered for construction is "selective retrieval" which is present in Claim 26 of the '646 Patent and Claim 15 of the '045 Patent. Planet Bingo argues for ordinary and customary meaning. VKGS counters that this term is insolubly ambiguous because it occurs in two dependent claims, and the independent claims on which those two depend require the retrieval of *all* the preselected sets of numbers. It argues that it is logically inconsistent for retrieval to be of an entire group and also selective. Planet Bingo, in contrast, argues that selective retrieval means the selection of less than all the sets of numbers previously retrieved.

Claims must "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). "[D]etermination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001). "If the court determines that a claim is not 'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C.

§ 112, ¶ 2." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). "Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'" *Id.* (quoting *Exxon Research & Eng'g Co.*, 265 F.3d at 1375). "[T]his standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). "A claim is not 'indefinite' simply because it is hard to understand when viewed without benefit of the specification." *S3 Inc. v. Nvidia Corp.*, 259 F.3d 1364, 1369 (Fed. Cir. 2001). Nevertheless, the Court may not rewrite the claim to preserve validity. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) ("It is not our function to rewrite claims to preserve their validity.").

The claims at issue are as follows:

> 26. The system of claim 1 wherein the program enables **selective retrieval** by the player of at least one of the set of Bingo numbers preselected by the player and stored in the memory off the computer into a portable terminal for play in a selected claim of Bingo.

> 15. The system of claim 10 wherein the computer program enables **selective retrieval** by the player of at least one of the sets of Bingo numbers preselected by the player and stored in the memory of the computer into a portable terminal for play in the selected game of Bingo.

13

('646 Patent, Claim 26; '045 Patent, Claim 15 (emphasis added).)[3] Each is a dependent claim which must "be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d). The pertinent portions of the two independent claims whose limitations must be ascribed to Claim 26 and Claim 15 are as follows:

> 1. A system for managing a game of Bingo which comprises:
>
> . . .
>
> (c) a program in the computer enabling:
>
> . . .
>
> (ii) storage of the sets of Bingo numbers which are preselected by the player as a group in the memory of the computer;
>
> . . .
>
> (iv) **retrieval of the group** using the player identifier;
>
> (v) **selection from the group** by the player **of at least one of the sets** of Bingo numbers preselected by the player and stored in the memory of the computer as the group . . . **wherein a number of sets of Bingo numbers selected for play in the selected game of Bingo is less than a total number of sets** of Bingo numbers in the group;
>
> . . .
>
> 10.  A system for managing a game of Bingo which comprises:
>
> . . .

---

[3]The term "selectively retrieved" is also present in Claim 27 of the '646 Patent and Claim 16 of the '045 Patent, which are dependent on Claim 26 and Claim 15 respectively.

14

(d) a computer program operating on the computer enabling:

. . .

(iv) **retrieval of all the sets** of Bingo numbers using the player identifier;

(v) **selection, upon retrieval of all the sets** of Bingo numbers, **of at least one of the sets** of Bingo numbers and less than all the sets of Bingo numbers preselected by the player and stored in the memory of the computer . . .

. . .

('646 Patent, Claim 1; '045 Patent, Claim 10 (emphasis added).)

The Court finds that VKGS has shown by clear and convincing evidence that the Claims 26 and 15 are insolubly ambiguous. The plain language of the independent claims is incompatible with the plain language of the dependent claims. Claim 1 of the '646 Patent and Claim 10 of the '045 Patent (the independent claims at issue) provide the limitation that "retrieval of the group"/"retrieval of all the sets of Bingo numbers" occurs before any selection by the player. It is impossible for this "group retrieval" limitation to coexist with the "selective retrieval" limitation of the dependent claims. In other words, there is no way to construe the dependent claims in a manner that does not allow for the skipping of the group retrieval step that is required in the independent claims.

To save these claims, Planet Bingo argues that "selective retrieval" is merely a succinct restatement of the entire "selection" step in the related independent claims (i.e. "selective retrieval" is selection from the group by the player of at least one of the sets of

15

Bingo numbers *after the group has been retrieved*). This interpretation is not possible. First, the language of the "selection" step is not built into a specialized meaning for "selective retrieval" because, in that case, it would be redundant for the "selective retrieval" claims to repeat the phrase "of at least one of the sets of Bingo numbers preselected by the player." (*See* '646 Patent, Claims 1, 26.) Moreover, the plain language of the dependent claims clearly provides that the sets are "stored in the memory of the computer" when selective retrieval occurs, meaning they have not been *previously retrieved* at the time of selective retrieval. ('646 Patent, Claim 26; '045 Patent, Claim 15.) Even ignoring that language, Planet Bingo's strained interpretation fails because it leads to inconsistent use of the term "retrieval." Essentially, Planet Bingo is asking the Court to interpret "retrieval" in its ordinary sense (to regain, to get back) in the independent claims but interpret it differently in the dependent claims to mean "selection." The use of the adjective "selective" does not justify such an interpretation that necessarily requires the Court to rewrite the dependent claims to remove the base noun "retrieval."

Planet Bingo also points to the prosecution history to support its argument. Claim 1 of the '646 Patent was originally presented without any retrieval or selection language. This language was added via a "selective retrieval" step in a March 23, 2001, Office Action Response. (Dkt. No. 51, Attach. 4, at PageID# 1565, 1583.) Later on in prosecution, Claim 1 was amended to replace "selective retrieval" with the present two steps of "group retrieval" and "selection" from the retrieved group. (Dkt. No. 51, Attach. 5, PageID# 1619, 1628-29.)

Planet Bingo argues that this history clearly manifests an intent by Planet Bingo to act as a lexicographer in defining the "selective retrieval" of dependent claims 26 of the '646 Patent and 15 of the '045 Patent to be nothing more than the "selection" step which now appears in the independent claims. This is not the case. Planet Bingo made a conscious choice in the prosecution to remove the phrase "selective retrieval" in the independent claims, while leaving it in the dependent claims. In doing so, Planet Bingo changed the extent of what it was claiming in the independent claims, while leaving the dependent claims unaltered. It is disingenuous for Planet Bingo to now claim that the two are equivalent when it only changed the language in one. Indeed, the amended language in the independent claims cannot be equivalent to the unaltered language of the dependent claims because the former uses the adjectival phrase "of the group" to modify "retrieval" while the latter uses the antonymous adjective "selective" to modify "retrieval."

Instead of aiding Planet Bingo, the prosecution history supports VKGS's argument that "selective retrieval" is insolubly ambiguous. In the remarks attached to the October 2001 amendment to the claims of the '646 Patent (the amendment which replaced "selective retrieval" with group retrieval and then selection from the retrieved group), the applicants noted that the previous, "selective retrieval" version of Claim 1 had been rejected as unpatentable in light of *Goldfarb* (U.S. Patent No. 5,472,209) which taught that "the player is able to replay *any* preselected set of numbers merely by entry of his player identifier." (Dkt. No. 55, Attach. 5, Page ID# 1620.) The applicants distinguished the amended version

17

of Claim 1 (group retrieval followed by selection) from *Goldfarb* by stating that in *Goldfarb* there was "no showing or suggesting of enabling a player **to retrieve a group of game sheets** using a player identifier and selecting **from those game sheets** one (1) or more game sheets to play." (*Id.* at Page ID# 1621 (emphasis added).) Thus, the prosecution history makes clear that "selective retrieval" was amended to *group retrieval* and then selection from the retrieved group in order to avoid unpatentability on the account of obviousness in light of the prior art of *Goldfarb*.[4] Accordingly, not only is a claim allowing for "selective retrieval" likely unpatentable in light of the prior art, but the applicants through their amendments and remarks implicitly disclaimed the equivalence of "selective retrieval" to the independent claims' group retrieval followed by selection from the retrieved group.

In conclusion, the two dependent claims are inconsistent with the independent claims, and there is no narrowing construction that can be adopted without either rewriting the dependent claims to not involve "retrieval" or interpreting "retrieval" to mean one thing in the independent claims and another thing in the dependent claims. Thus, as a matter of law, Claim 26 of the '646 Patent and Claim 15 of the '045 Patent (along with Claim 27 of the '646 Patent and Claim 16 of the '045 Patent, which depend on Claim 26 and Claim 15, respectively) are invalid under 35 U.S.C. § 112(b) because they are indefinite.

---

[4] The same holds true for the prior art of *Walker*, U.S. Patent No. 6,086,477. In the same remarks, the applicants distinguished Claim 1 on the grounds that "[n]one of the databases described in the *Walker* patent allow for storage of a **group of numbers** for a player **which a player can retrieve** using a player identifier in order **to select a set of numbers from the group** for play in the game of Bingo." (Dkt. No. 55, Attach. 5, Page ID# 1623 (emphasis added).)

## IV.

Having construed the necessary claim terms, the Court is willing to address motions for summary judgment at this time. If VKGS wishes to re-raise its § 101 motion for summary judgment, which this Court previously denied without prejudice (Dkt. No. 34), it may do so.

An order consistent with this opinion will be entered.


Dated: April 22, 2013                  /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE