IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PLANET BINGO, LLC,<br>a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VKGS LLC, dba VIDEO KING,<br>a Delaware limited liability company,<br><br>Defendant. | Case No. 1:12-cv-00219-RHB<br><br>Hon. Robert Holmes Bell |

**DEFENDANT'S NOTICE OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF U.S. PATENT NOS. 6,398,646 AND 6,656,045**

Defendant VKGS LLC ("VKGS") hereby renews its motion that this Court grant summary judgment of invalidity of U.S. Patent Nos. 6,398,646 ("the '646 Patent") and 6,656,045 ("the '045 Patent") and thereby dismiss all claims pending in this lawsuit against VKGS. As set forth in the accompanying Brief in Support of its Motion, claims 1-27 of the '646 Patent and claims 1-30 of the '045 Patent are invalid as a matter of law under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

Pursuant to Local Civil Rule 7.1(d), the undersigned has conferred with counsel for Plaintiff with regard to this Motion. Plaintiff's counsel indicated it would oppose this Motion.

Respectfully submitted,

Dated: June 4, 2013

s/Steven L. Underwood
Steven L. Underwood, PRICE HENEVELD LLP
sunderwood@priceheneveld.com
695 Kenmoor Avenue S.E. │ P.O. Box 2567
Grand Rapids, Michigan 49501-2567
T: 616.949.9610 │ F: 616.957.8196
*Attorneys for VKGS LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PLANET BINGO, LLC, <br> a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> VKGS LLC, dba VIDEO KING, <br> a Delaware limited liability company, <br><br> Defendant. | Case No. 1:12-cv-00219-RHB <br><br> Hon. Robert Holmes Bell |

## DEFENDANT'S BRIEF IN SUPPORT OF

## ITS RENEWED MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF

## U.S. PATENT NOS. 6,398,646 AND 6,656,045

### ORAL ARGUMENT REQUESTED

Steven L. Underwood
PRICE HENEVELD LLP
695 Kenmoor S.E.
P.O. Box 2567
Grand Rapids, Michigan 49501
616.949.9610
*Attorneys for Defendant*

<u>TABLE OF CONTENTS</u>

I.      BACKGROUND ...................................................................................................1

        A.      THE CLAIMS ...........................................................................................1

        B.      STATEMENT OF THE CASE...........................................................................2

        C.      APPLICABLE LAW......................................................................................3

II.     THE REMAINING CLAIMS OF THE '646 AND '045 PATENTS ARE INVALID UNDER 35
        U.S.C. § 101 ...................................................................................................9

        A.      SYSTEM CLAIM 1 OF EACH OF THE '646 AND '045 PATENTS RECITES PATENT-INELIGIBLE
                MENTAL PROCESSES ................................................................................11

        B.      METHOD CLAIMS 7, 13, AND 19 OF THE '646 PATENT AND METHOD CLAIMS 5, 10,
                17, AND 23 OF THE '045 PATENT RECITE THE SAME PATENT-INELIGIBLE MENTAL
                PROCESSES AS CLAIM 1 ...........................................................................16

        C.      THE REMAINING DEPENDENT CLAIMS OF THE '646 AND '045 PATENTS ALSO RECITE
                PATENT-INELIGIBLE SUBJECT MATTER .........................................................18

III.    CONCLUSION...................................................................................................25

TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 252 (1986) ........................................................................................ 3

*Bancorp Serv., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012) ...................................................................4, 6, 7, 8, 16

*Bilski v. Kappos,*
  130 S. Ct. 3218 (2010) ...................................................................................... 6, 15

*CLS Bank Int'l v. Alice Corp. Pty Ltd.,*
  ___ F.3d ____, 2013 WL 1920941 (Fed. Cir. May 10, 2012) ............................................. 4, 5, 8

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366, 1369 (Fed. Cir. 2011) ...............................................4, 6, 7, 15, 16, 17

*Dealertrack, Inc. v. Huber,*
  674 F.3d 1315, 1333 (Fed. Cir. 2012) ...............................................4, 6, 7, 8, 15, 25

*Diamond v. Deihr,*
  450 U.S. 175, 185 (1981) ................................................................................... 4, 5, 6

*Fort Props., Inc. v. American Master Lease LLC,*
  671 F.3d 1317 (Fed. Cir. 2012) ...........................................................4, 6, 7, 15

*Gottschalk v. Benson,*
  409 U.S. 63 (1972) ........................................................................5, 8, 9, 15, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 586 (1986) ...................................................................................... 4

*Mayo Collaborative Serv. v. Prometheus Labs., Inc.,*
  132 S. Ct. 1289 (2012) ......................................................................................... 6

*Parker v. Flook,*
  437 U.S. 584 (1978) ................................................................................ 5, 9, 15, 16

*Planet Bingo, LLC v. VKGS LLC,*
  Case No. 1:12-cv-00219-RHB, slip. op.
  (W.D. Mich. April 22, 2013) ...................................................................... 2, 3, 20

*Planet Bingo, LLC v. VKGS LLC,*
  Case No. 1:12-cv-00219-RHB, slip. op.
  (W.D. Mich. Oct. 19, 2012) ....................................................................... 2, 3

*SiRF Tech, Inc. v. Int'l Trade Comm'n,*
  601 F.3d 1319 (Fed. Cir. 2010) .............................................................. 15, 23

**Statutes**

35 U.S.C. § 101 .....................................................................1, 4, 6, 7, 9, 23, 25

35 U.S.C. § 112(b) .......................................................................................... 2, 20

Defendant VKGS LLC ("VKGS") renews its motion for summary judgment of invalidity of all remaining claims of U.S. Patent No. 6,398,646 issued on June 4, 2002, and U.S. Patent No. 6,656,045 issued on December 2, 2003, both entitled *Method and System for Storing Preselected Numbers for Use in Games of Bingo* (the "'646 and '045 patents" or "patents in suit"; see DKT. 1, Complaint, Exs. A and B).

As first set forth in VGKS' initial Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,398,646 and U.S. Patent No. 6,656,045 (DKT. 21 and 22) filed on August 31, 2013, VKGS maintains that each claim of the '646 and '045 patents is drawn to a purely mental process that can be as readily performed by the human mind, or by a human using a pen and paper. As a result, each claim fails to recite patent-eligible subject matter and is invalid as a matter of law under 35 U.S.C. § 101.

I.    **BACKGROUND**

A.    **THE CLAIMS**

Planet Bingo asserts that certain claims of the '646 and '045 patents are infringed. (DKT. 1, Complaint, ¶¶ 12, 17.) VKGS counterclaims that all claims of the '646 and 045 patents are not infringed and invalid and that all claims of the '045 patent are unenforceable. (DKT. 42, Amended Counterclaims, ¶¶ 5-64).

In the '646 patent, claims 1, 7, 13, and 19 are independent claims. Dependent claims 2-6 and 26-27 depend, directly or indirectly, from independent claim 1, dependent claims 8-12 each depend from independent claim 7, dependent claims 14-18 depend, directly or indirectly, from independent claim 13, and claims 20-25 depend, directly or indirectly, from independent claim 19. (DKT. 1, Ex. A, 8:46 to 12:65.) Dependent claims 26 and 27 have already been held invalid

under 35 U.S.C. § 112(b). *Planet Bingo, LLC v. VKGS LLC*, Case No. 1:12-cv-00219-RHB, slip op. at 18 and order (W.D. Mich. April 22, 2013) (DKT. 59 and 60).

In the '045 patent, claims 1, 5, 10, 17, and 23 are independent claims. Dependent claims 2-4 depend from independent claim 1, dependent claims 6-9 depend, directly or indirectly, from independent claim 5, dependent claims 11-16 depend, directly or indirectly, from independent claim 10, dependent claims 18-22 each depend from independent claim 10, and claims 24-30 depend, directly or indirectly, from independent claim 23. (DKT. 1, Ex. B, 8:64 to 14:41.) Dependent claims 15 and 16 have also been held invalid under 35 U.S.C. § 112(b). *Planet Bingo, LLC v. VKGS LLC*, Case No. 1:12-cv-00219-RHB, slip op. at 18 and order (W.D. Mich. April 22, 2013) (DKT. 59 and 60).

### B.    STATEMENT OF THE CASE

On August 31, 2012, VKGS LLC filed its Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 6,398,646 and 6,656,045. (DKT. 21 and 22), contending that the claims of the '646 and '045 patents were invalid under § 101 because they claimed an abstract idea. After briefing by the parties and a hearing on October 19, 2013, the Court issued its Memorandum Opinion and Order that same day, denying the motion without prejudice. See *Planet Bingo, LLC v. VKGS LLC,* Case No. 1:12-cv-00219-RHB, slip op. at 5 (W.D. Mich. Oct. 19, 2012) (DKT. 34). The Court then noted:

> At first blush, it appears to the Court that a human could manually perform each of the specific steps listed under Claim 1 of each patent, including a human filling out a bingo card, a human then handing the card to a cashier, the cashier then creating an appropriate bingo card, and the cashier then printing off a receipt. (See DKT. No. 1, Exs. A, B.) The Court is not convinced that having a computer perform these steps makes this abstract process non-abstract.

*Id*. at 3. It was then the Court's initial view that at least the system claims (exemplified by claim

1) of each patent were patent ineligible. *Id.* at 3. The Court, however, was then less certain regarding the method claims, and deferred its ruling on the issue until the *Markman* hearing had taken place and the claims had been interpreted. *Id.* at 4-5. The Court denied the motion without prejudice, but noted:

> However, despite the Court's reservations at this time, VKGS has presented a strong case, and the Court may still make the determination that the patents at issue fail under § 101. Therefore, the motion will be denied without prejudice, and VKGS will be free to re-raise this issue following the *Markman* hearing." *Id.* at 5.

The *Markman* hearing was held on April 18, 2013 and the Court's Opinion regarding claim construction promptly followed. See *Planet Bingo, LLC v. VKGS LLC,* slip op. (W.D. Mich. April 22, 2013) (Dᴋᴛ. 59). There, the Court held that the terms of the claims of the patents in suit, for the most part, were entitled to their ordinary meaning and did not require construction by the Court. *Id.* at 5-7. The remaining terms have been construed and are not subject to doubt. *Id.* at 7-12. The Court concluded by noting that if VKGS wishes to re-raise its § 101 motion for summary judgment, which the Court had previously denied without prejudice, VKGS may do so. *Id.* at 19.

This Motion follows. There are no facts in dispute. This motion is ripe for consideration.

### C. Aᴘᴘʟɪᴄᴀʙʟᴇ Lᴀᴡ

A motion for summary judgment shall be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fᴇᴅ. R. Cɪᴠ. P. 56. "The mere existence of this scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence from which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

35 U.S.C. § 101 states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Although the subject matters of inventions that might satisfy 35 U.S.C. § 101 are broad, three judicially created exceptions are ineligible for patent protection: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Deihr,* 450 U.S. 175, 185 (1981). Whether a patent claim is invalid under 35 U.S.C. § 101 is an issue of law, properly decided on summary judgment. See, *e.g., Bancorp Serv., LLC v. Sun Life Assurance Co. of Canada.,* 687 F.3d 1266, 1273 (Fed. Cir. 2012); *Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1320 (Fed. Cir. 2012); *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1369 (Fed. Cir. 2011).

Unfortunately, as least within the Court of Appeals for the Federal Circuit, the law applying 35 U.S.C. § 101 remains unsettled. Indeed, only weeks ago, the Court of Appeals for the Federal Circuit evidenced deep divisions between its respective members on this subject in *CLS Bank Int'l v. Alice Corp.,* ___ F.3d ____, 2013 WL 1920941 (Fed. Cir.  May 10, 1013) (*en banc*). There, a majority of the Federal Circuit judges, in a *per curiam* decision, affirmed the lower court's holding that the asserted method and computer-readable media claims were not patent-ineligible under 35 U.S.C. § 101. *Id.* at *1. An equally divided court also affirmed the

district court's holding that the asserted system claims are not patent eligible under that statute. *Id.*[1]

However, notwithstanding the split within the Federal Circuit, this Court is not without guidance. The United States Supreme Court has provided several decisions that VKGS respectfully contends supports judgment as a matter of law in its favor.

One such Supreme Court decision is *Gottschalk v. Benson,* 409 U.S. 63 (1972), where the patent claimed a method of programming a general purpose computer to convert signals from binary-coded decimal ("BCD") numbers into pure binary numbers using a well-known mathematical algorithm. *Benson*, 409 U.S. at 65. Because the claims involved a conversion that could be done mentally, even without a computer, the claims were held unpatentable. *Id.* at 67.

Following *Benson*, the Supreme Court invalidated claims for a method of updating alarm limits for a catalytic conversion processes. *Parker v. Flook*, 437 U.S. 584, 585-86 (1978). The *Parker* Court observed that the calculations, although also useful for computerized applications, "can be made by pencil and paper calculations." *Id.* at 586. The majority opinion noted: "We think this case must also be considered as if the principle or mathematical formula were well known." Id. at 592. That is, claims to "a new and presumably better method for calculating alarm limit values" were invalid as nonstatutory if "that method was also known." *Id.* at 595.

The Supreme Court next considered § 101 patent eligibility in *Diamond*, 450 U.S. at, 192-93, where it held that claims for the industrial process of molding of synthetic rubber did constitute patentable subject matter. There, the majority stated: "That respondents' claims

---

[1] The Federal Circuit presented five separate opinions, each reflecting the views of one or more judges, none of which are precedential. *Id*., Rader op. at *20 n 1.

involve the transformation of an article, in this case raw, uncured synthetic rubber, into a different state or thing, cannot be disputed." *Id*. at 184. This was "not altered by the fact that in several steps of the process a mathematical equation and a programmed digital computer are used." *Id*. at 185.

In 2010, the Supreme Court decided *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). The claims there recited a series of steps instructing how buyers and sellers of commodities in the energy market can protect, or hedge against the risk of price changes. *Id.* at 3223. The Court held that this claim recited an abstract idea and was therefore patent-ineligible. *Id.* at 3231. The reasoning was that the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant post-solution activity'." *Id*. at 3230, citing*, Diehr*, 450 U.S. at 191-192.

The issue of invalidity under 35 U.S.C. § 101 was most recently taken up by the Supreme Court in *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012). There, the Court again invalidated the asserted claims, finding that the claims for measuring and analyzing metabolites in a patient's blood screen were so broadly claimed, as a law of nature, as to tie up their use in future innovations premised upon them. *Mayo*, 132 S. Ct. at 1301. "[O]ne must do more than simply state the law of nature while adding the words 'apply it'." *Id*. at 1294.

In light of the foregoing Supreme Court decisions, it is instructive to also consider Federal Circuit decisions that have likewise affirmed summary judgments of invalidity based on the asserted patent's failure to recite patentable subject matter. *See, e.g.,* In *CyberSource Corp., supra; Dealertrack*, *supra*; *Fort Props., Inc., supra*; *Bancorp Serv., L.L.C., supra*.

In *CyberSource Corp*., the Federal Circuit invalidated method and system claims for

6

Case 1:12-cv-00219-RHB  Doc #66 Filed 06/04/13  Page 11 of 29  Page ID#1910



detecting credit card fraud. *Id.* at 1367-68. There, even though the method claim recited a process that could be used over the Internet, the Federal Circuit observed that the claimed steps that "can be performed in the human mind, or by a human using a pen and paper." *Id.* at 1372. CyberSource's system claim, which recited a machine with processors programmed to carry out specific steps, was also not patentable because it was functionally defined by the same broad process steps recited in the method claim. *Id.* at 1374. That is, the system claims were viewed the same as the method claims.

In *Dealertrack*, the claims covered a "computer-aided method and system, respectively, for processing credit applications over electronic networks." *Dealertrack*, 674 F.3d at 1317. The Federal Circuit affirmed the lower court's entry of summary judgment of invalidity for failure to recite patent-eligible subject matter. *Id.* at 1333. Even though the claim included a "computer-aided" limitation, the claim was held not patent-eligible. *Id.*

In *Fort Props.*, the claims called for aggregating a number of properties into a "real estate portfolio" and then dividing the portfolio into "deedshares." *Fort Props.*, 671 F.3d. at 1318-19. Claim 32 included the additional limitation requiring a computer to perform these acts. *Id.* at 1323. The Federal Circuit nevertheless affirmed summary judgment for invalidity under 35 U.S.C. § 101. *Id.* at 1323-24. The Federal Circuit reasoned that "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in programs instructions on a computer readable medium." *Id.* at 1323, quoting *Cybersource*, 654 F.3d at 1375. Rather, the use of a machine "must impose meaningful limits on the claims' scope." *Id.*

In *Bancorp*, 687 F. 3d 1266, the patents described a system and method for

7

administering and tracking a value for a life insurance policies issued pursuant to corporate-owned life insurance (COLI) and bank-owned life insurance (BOLI) plans. *Id*. at 129. The Court of Appeals affirmed the grant of summary judgment of invalidity of the patents in suit under § 101. *Id*. at 1281.  The Federal Circuit commented on the role of computer technology in society and as applicable to patent law. In particular, the Federal Circuit stated:

> At its most basic, however, a "computer" is "an automatic electronic device for performing mathematical or logical operations." 3 Oxford English Dictionary 640 (2d ed.1989). As the Supreme Court has explained, "[a] digital computer ... operates on data expressed in digits, solving a problem by doing arithmetic as a person would do it by head and hand." *Benson,* 409 U.S. at 65. **Indeed, prior to the information age, a "computer" was not a machine at all; rather, it was a job title: "a person employed to make calculations."** Oxford English Dictionary, *supra.* Those meanings conveniently illustrate the interchangeability of certain mental processes and basic digital computation, and help explain why **the use of a computer in an otherwise patent ineligible [sic] process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes**. As we have explained, "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed.Cir.2012).

*Id.* at 1277-78 (emphasis added). The Federal Circuit invalidated the method claims because the computer required by the claims at issue were employed only for its most basic function—the performance of repetitive calculations—and, as such, did not impose meaningful limits on the scope of the claims. *Id*. at 1278.

Most recently, as noted above, in CLS *Bank Int'l v. Alice Corp. Pty Ltd.*, ___ F.3d ____, 2013 WL 1920941 (Fed. Cir. May 10, 2013), a divided en banc court affirmed the lower court's summary judgment that claims directed to a method, system and readable medium for a specific application for exchanging obligations between parties using a computer were patent-ineligible under § 101. *CLS Bank Int'l*, at *1.

8

In this case, the claims of the '646 and '045 patents are drawn to a pure mental process- playing the game of bingo-- one that can be carried out by a human using pencil and paper. Accordingly, those claims do not recite patentable subject matter. *See, e.g.*, *Parker*, 437 U.S. at 586; *Benson*, 409 U.S. at 66. The addition of a computer is not a significant part of the invention and is not a meaningful limitation.

## II.    THE CLAIMS OF THE '646 AND '045 PATENTS ARE INVALID UNDER 35 U.S.C. § 101

The claims of the '646 and '045 patents recite subject matter that can be carried out by a human using pencil and paper, and are therefore invalid as a matter of law under 35 U.S.C. § 101 for failure to claim patentable subject matter.

According to Planet Bingo, its patented system "allows a player to store multiple sets of preferred Bingo numbers on his/her player's card. Upon swiping the player's card at a gaming facility, any of the player's stored sets of preferred Bingo numbers may be downloaded onto a handheld device or printed onto paper." (See, DKT. 1, Complaint, ¶ 8.) The motivation for the alleged invention of the patents in suit is as follows:

> There remains the need for an automated Bingo system which allows players to select their own numbers and store their numbers in the automated system for use in later sessions of Bingo. The present invention allows for the printing of game tickets onsite, having the players' preselected sets of Bingo numbers, and for tracking and validating the sets of numbers using the automated system.

(DKT. 1, Ex. A, '646 patent, 2:4-10.) Indeed, in describing how the alleged invention is to be practiced, the patents in suit expressly state the following:

> The "U-PICK-EM" Bingo game is preferably played similarly to standard Bingo games (FIG. 10). The hall randomly selects numbers and calls the numbers. ***Any well known means can be used to select the numbers.*** In the preferred embodi- ment, ***the selection of numbers and calling of numbers is not done using the computer 12.*** However, the computer 12 may automatically enter the Bingo

numbers as they are selected or called. The computer 12 can use a ball call inter-face to automatically enter the winning Bingo numbers into the computer 12. A ball call interface is a device that reads the Bingo numbers once they are called and placed into the ball call blower rack. Alternatively, ***the Bingo numbers can be manually entered into the computer 12***. As the numbers are called, each player marks their ticket 52, game board 54 or electronic Bingo device 26 appropriately. When a player or players have covered all of the numbers of a set of numbers 56, ***the player signals a Bingo***. Alternatively, where the game is a matrix game, ***the player would signal when all the numbers in either a row or column on the ticket 52 is covered***. Therefore in a matrix game, a winning set of numbers 56 may not be a set of numbers 56 selected by a player but rather include a single number for each set of numbers 56 selected by a player. ***When a player signals a Bingo***, the ***player shows his ticket 52 and receipt 50 to the hall***. The hall enters the control number 58 of the set of numbers 56 forming the winning Bingo into the computer 12. The computer 12 compares the player's set of numbers 56 with the called numbers. The computer 12 then indicates whether the set of numbers 56 was sold for that particular session and whether the set of numbers 56 is a winning set of numbers 56. If the set of numbers 56 is verified as a winning set, the set of numbers 56 is preferably displayed on monitors 24 in the hall so that the remaining players can see the winning set of numbers 56. To collect a winning jackpot, ***the player must show his original receipt 50 to the hall***. The hall compares the validation numbers 60 of the receipt 50 and ticket 52 to confirm that the ticket 52 was purchased for that particular session.

(Dᴋᴛ. 1, Ex. A, '646 patent, 8:3-39) (emphasis added.) Manual facilitation of the system and method claimed is expressly contemplated:

- Where "[a]ny well known means can be used to select the numbers;"
- where the "selection of numbers and calling of numbers is not done using a computer 12;"
- where the "Bingo numbers can be manually entered into the computer 12;"
- where "the player signals a Bingo;"
- where "the player would signal when all the numbers in either row or column of the ticket is covered;"
- where "when a player signals a Bingo;"
- where the "player shows his ticket 52 and receipt 50 to the hall;" and, finally,
- when "the player must show the original receipt 50 to the hall."

All of these, even within the context of the alleged claims, demonstrate that a computer is not required, as set forth further below, to practice the alleged invention.

In fact, a review of the flowchart of FIG. 10, which in the above excerpt is "played similarly to standard Bingo games" (see Dκτ. 1, Ex. A, '640 patent 8:3-4), establishes that the only "invention" at issue here is the idea of playing vintage Bingo using a computer doing its most basic function—making calculations and printing (i.e., "comparing" as FIG. 10 puts it). Indeed, Planet Bingo's predecessor, Melange Computer Services, Inc., boasted that its patented system and method does nothing more than provide a manageable way of playing of the game, where it stated on its website in 2003: "As an aid, VIPick'em does not introduce a new game, merely a more manageable way of playing the Pick Game." See, Ex. 1, http://web.archive.org/web/20030602132959/http://melange-inc.com/Docs/do_its.htm.

All of the acts in the systems and steps in the methods recited in Planet Bingo's claims for storing and downloading Bingo numbers can be readily accomplished by a human using pencil and paper, as shown in the claim charts for the patents and attached here to as Exs. 2 and 3. Essentially, the claims describe a method for accomplishing an abstract idea – playing vintage Bingo – and then command "apply it" with a computer. Because these claims recite an abstract idea—a mental process—they are invalid as a matter of law.

### A.  THE INDEPENDENT "SYSTEM" CLAIMS OF EACH OF THE '646 AND '045 PATENTS RECITES PATENT-INELIGIBLE MENTAL PROCESSES

Independent claim 1 of the '646 patent and independent claims 1 and 10 of the '045 patent are for a "system" for managing a game of Bingo." Claim 1 of the '646 patent states:

1.  A system for managing a game of Bingo which comprises:

(a) a computer with a central processing unit (CPU) and with a memory and with a printer connected to the CPU;

(b) an input and output terminal connected to the CPU and memory of the computer; and

(c) a program in the computer enabling:

(i) input of at least two sets of Bingo numbers which are prese-
lected by a player to be played in at least one selected game of Bingo in a
future period of time;

(ii) storage of the sets of Bingo numbers which are preselected by
the player as a group in the memory of the computer;

(iii) assignment by the computer of a player identifier unique to
the player for the group having the sets of Bingo numbers which are
preselected by the player wherein the player identifier is assigned to the
group for multiple sessions of Bingo;

(iv) retrieval of the group using the player identifier;

(v) selection from the group by the player of at least one of the
sets of Bingo numbers preselected by the player and stored in the
memory of the computer as the group for play in a selected game of
Bingo in a specific session of Bingo wherein a number of sets of Bingo
numbers selected for play in the selected game of Bingo is less than a
total number of sets of Bingo numbers in the group;

(vi) addition by the computer of a control number for each set of
Bingo numbers selected for play in the selected game of Bingo;

(vii) output of a receipt with the control number, the set of Bingo
numbers which is preselected and selected by the player, a price for the
set of Bingo numbers which is preselected, a date of the game of Bingo
and optionally a computer identification number; and

(viii) output for verification of a winning set of Bingo numbers by
means of the control number which is input into the computer by a
manager of the game of Bingo.

(Dкт. 1, Ex. A, 8:46 to 9:18.) Claims 1 and 10 of the '045 patent are quite similar. (Dкт. 1, Ex.

B, 8:64 to 9:36 and 11:1-37.) The first mentioned elements of the claims present the classic

configuration of a general purpose computer, that is, a computer equipped with a central pro-

cessing unit (CPU) with a memory, and a printer connected to the CPU, and an input and output

12

terminal connected to the CPU and memory of the computer. Thus, the patentability of the claims, if any, must lie in the last element—the program.

Yet the program required to practice the "system" comprises eight specific acts (in the case of claim 1 of the '646 patent) and ten or nine specific acts (in the case of claims 1 or 10, respectively, of the '045 patent), each of which relates to inputting at least two preselected sets of Bingo numbers, storing this data, assigning a player identifier to the sets of Bingo numbers as a group, retrieving the sets of Bingo numbers, selecting from the group by the player of one or more sets of Bingo numbers preselected (less than the total number of sets of Bingo numbers in the group), adding or assigning a control number to the selection, outputting a receipt and outputting a verification of the winning set of Bingo numbers via the control number. Claim 1 in the '045 patent adds the acts of the player paying to purchase the set(s) of Bingo numbers and inputting into the computer to verify a winning set of Bingo numbers. Claim 10 of the '045 patent is similar.

In practicing the claimed "system," a human can readily accomplish each of the steps to make, or "input," his/her own Bingo card by selecting his/her numbers with a piece of paper and a pencil and/or mentally processing the information. For example, humans could manually and physically perform the following steps:

1.  A human (either the player or the cashier) fills out a lottery-style paper-based card with a lead pencil to fill in the ovals for a preselected set of Bingo numbers, thus "inputting" the selection.

13



2.     The cards thus "store" the selection. Each lottery-style paper-based cards is also capable of storing multiple sets of numbers. If more than one card was filled out, this human (the player) will have created a "group" of multiple preselected sets of Bingo numbers.

3.     A human (the player) "assigns" the selections to themselves by physically carrying these cards about.

4.     When it was time to purchase a Bingo card, a human (the player) could physically "retrieve" all of the lottery-style paper-based cards then carried on his/her person–i.e., take all of the cards out of his/her pocket.

5.     A human (the player) can then "select" less than all the cards and physically hand the selected cards over to another human (the cashier) at a Bingo game.

6.     A human (the cashier) can "add" a sequential control number for each of the lottery-style paper-based cards selected for play to be handwritten on the Bingo card.

7.     The lottery-style paper-based cards can be physically read by a human (the cashier), who then may write out by hand and create one or more appropriate Bingo cards with pencil and paper.

8.     A human (the cashier) can then "output" or create a handwritten receipt, with pencil and paper, which includes the manually assigned control number, the price paid, and the date, and hand it to another human (the player).

9.     A winning Bingo card can be "verified" by one or more humans (the player and/or the operators of the Bingo game) simply by looking at the control number on the Bingo card alleged to be a winner.

The additional steps in claims 1 and 10 of the '045 patent add nothing further of significance to the "system" claimed beyond steps that can also be taken with paper and pencil.

14

In claim 1 of the '045 patent, for example, it includes nothing other than one human (the player) handing "payment" to another human (the cashier) for the purchase of the set(s) of Bingo numbers, and physically looking at the Bingo card, or "inputting" information into the human brain, followed by the mental step of "validation" of the Bingo cards for "verification" of a winning set of Bingo numbers.

As it will be apparent to the Court, there is no difference between the system described above—using paper and pencil and mental steps, all without the use of the claimed computer program—and the claimed "system," other than application of a general purpose computer to make it easier, faster, cheaper, better, and more modern, or, as Planet Bingo's predecessor aptly put it, more "manageable."

Each step in the program of the "system" claims attempts to recite an abstract idea— one that can be performed mentally by a human or with the aid of pencil and paper. Special or unique computer devices are recited, but impose no meaningful limit on the scope of the claim.

> In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations.

*Dealertrack*, 674 F.3d at 1333, quoting *SiRF Tech, Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319 at 1333 (Fed. Cir. 2010). "System" claim 1 of the '646 and "system" claims 1 and 10 of the '045 patent fail to recite patent-eligible subject matter.

Accordingly, the Court should grant summary judgment of invalidity of these claims. *See, e.g.*, *Bilski*, 130 S. Ct. at 3231; *Parker*, 437 U.S. at 595-96; *Benson*, 409 U.S. at 68-9; *Fort Props.*, 671 F.3d at 1323-24; *Dealertrack*, 674 F.3d at 1334; *CyberSource*, 654 F.3d at 1372.

**B.** **THE INDEPENDENT "METHOD" CLAIMS 7, 13, AND 19 OF THE '646 PATENT AND INDEPENDENT "METHOD" CLAIMS 5, 17, AND 23 OF THE '045 PATENT RECITE THE SAME PATENT-INELIGIBLE MENTAL PROCESSES AS THE "SYSTEM" CLAIMS**

VKGS respectfully contends that treating a "method" claim that recites the same functions as an patent-ineligible "system" claim differently would "exalt form over substance since the claim is really to the method of series of functions itself." *CyberSource*, 654 F.3d at 1374. (citations omitted). That is, the format of the various method, system, and medium claims should not change the patent eligibility analysis under § 101. *Bancorp*, 687 F.3d at 1277 ("[T]he form of the claims should not trump basic issues of patentability." *Id.*, citing *Parker*, 437 U.S. at 593. Indeed, doing so "would make the determination of patentable subject matter depend simply on the draftsmen's art and would ill serve the principles underlying the prohibition against patents for 'ideas' or phenomena of nature." *Parker*, 437 at 593.

Independent "method" claims 7, 13, and 19 of the '646 patent and independent "method" claims 5, 17, and 23 of the '045 patent recite virtually the same functions as the aforementioned "system" claims of the patents in suit.

The language below highlights the similar language between the claims. For example, the "method" of claim 7 of the '646 patent includes each of the steps of claim 1, including "input" of sets of numbers, "storage" of the sets of numbers as a group, "assignment" of a player identification, "retrieval" of the all of the sets of numbers, "selection" of at least one set of numbers for play, "addition" of control number, "output" of a receipt, and "output" of a verification. Claim 7 further adds the completely abstract idea of "playing" the game of Bingo and "verifying" the winning set. These recitations do not change the analysis applicable to claim 1. Nothing in claim 7 requires or even suggests that these steps must be performed by any

particular machine. To the contrary, a lottery-style, paper-based card, a handwritten Bingo card, and receipt handwritten on a piece of paper by a human fits this definition.

Moreover, even if the claimed elements had referred to a unique computer structure, "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers." *CyberSource*, 654 F.3d at 1375. *Id.* (quoting *SiRF Tech, Inc.*, 601 F.3d at 1333). Here, the computer does not play a significant part in permitting the claimed method to be performed apart from the mental steps that a human can take to satisfy the functional elements of the claim. Nor does the computer transform anything—it simply facilitates data gathering, manipulation, and reorganization. *See, e.g., CyberSource*, 654 F.3d at 1370, 1375.

Similarly, the claimed computer performing the program functions provides no detail about any particular apparatus that must perform these functions. Indeed, the claimed "system" could be a pencil adapted by being placed in the hand of a person who is performing the claimed functions. Here, the "method" of claim 7 fails to "play a significant part in permitting" the mental process of the claim to be performed. Due to the incidental nature of the structure claimed and the functional definition of claim 7, the claim fails to recite patentable subject matter for all of the reasons expressed above with respect to claim 1.

Accordingly, the analysis described above with respect to the "system" claims applies equally to "method" claim 7. Independent claims 13 and 19 of the '646 patent and claims 5, 17, and 23 of the '045 patent lend themselves to similar conclusions. For all of the reasons expressed above with respect to claim 1, the Court should also find "method" claims 7, 13, and

19 of the '646 patent and "method" claims 5, 17, and 23 of the '045 patent invalid for failure to recite patent-eligible subject matter.

### C.    THE REMAINING DEPENDENT CLAIMS OF THE '646 AND '045 PATENTS ALSO RECITE PATENT-INELIGIBLE SUBJECT MATTER

In addition to independent claims 1, 7, 13, and 19 of the '646 patent and claims 1, 5, 10, 17, and 23 of the '045 patent, the claims that depend from the independent claims remain for consideration. None of these claims, when read in combination with its associated independent claim, recites any patent-eligible subject matter. Each simply adds additional mental steps.

Dependent claims 2 and 8 of the '646 patent and dependent claims 7, 11, 19, and 24 of the '045 patent depend from the patent-ineligible mental process of claim 1 of either patent. These claims recite the additional concept of potentially a second computer with a second pro-gram that enables an output of a print of the set of Bingo numbers and the control number to be used by the player of the game of Bingo. (See DKT. 1, Ex. A, '646 patent, 9:18-22; 10:13-18; Ex. B, '045 patent, 10:31-35; 11:38-42; 12:33-37; 13:19-24.) As discussed above with respect to claim 1, anything that a computer can output by a printer can be handwritten by a human. That is, a person can handwrite the output of a set of Bingo numbers and a control number to be used by the player for the game of Bingo. The aforementioned claims add nothing to the patent eligibility analysis and are invalid for the same reasons as claim 1. See, i.e., *Benson*, 409 U.S. at 65 (finding that a method of programming a general purpose of computer to convert binary coded decimal ("BCD") numbers into pure binary numbers through the use of a particular mathematical algorithm did not recite patent eligible subject matter).

Dependent claims 3 and 9 of the '646 patent and dependent claims 3, 12, and 20 of the '045 patent similarly recite a system where the player inputs a set of preselected Bingo

numbers into the computer. (See DKT. 1, Ex. A, '646 patent, 9:23-24; 10:18-21; '045 patent, 9:43-46; 11:43-45; 12:38-40.) The analysis with respect to claim 1 already contemplates that someone, either the player and/or the cashier, is inputting, that is, writing down, the preselected numbers. The foregoing claims add nothing patent-eligible to the claims from which they depend and for the same reasons are invalid.

Dependent claims 4 and 10 of the '646 patent and dependent claims 13 and 21 of the '045 patent recite that the set of Bingo numbers preselected by the player is inputted by the operator of a computer. (See DKT. 1, Ex. A, '646 patent, 9:25-27, 10:21-23; Ex. B, '045 patent, 11:46-48; 12:41-43.) Again, as noted for the foregoing claims, the specific identity of the human that writes down the sets of Bingo numbers adds nothing patent-eligible to the claims and, for the same reasons as set forth above, the foregoing claims are invalid.

Dependent claims 5 and 11 of the '646 patent each recite that the input and output terminal includes a video screen which displays the receipt. (See DKT. 1, Ex. A, '646 patent, 9:28-29; 10:24-25.) Again, beyond the notion of using a computer, which inherently has a video screen as an input/output device, the use of a video screen as an input/output device cannot, without more, add patent eligibility to the claims. Claims 5 and 11 of the '646 patent are invalid for the same reasons as claim 1.

Dependent claims 6 and 12 of the '646 patent and dependent claim 14 of the '045 patent recite a system where the output of the verification of the winning set of Bingo numbers with the control number is printed by the printer. (See DKT. 1, Ex. A, '646 patent, 9:30-32; 10:26-28; Ex. B, '045 patent, 11:49-52.) Again, the step of printing the output through a printer without something more adds nothing patent-eligible to the claims from which these claims

19

depend and, for the same reason explained in detail with respect to claim 1, are invalid.

Dependent claims 14 and 20 of the '646 patent recite the method whereby the display of a set of Bingo numbers and the control identifier is a printed receipt, and a printed receipt is used to obtain a Bingo card having the set of Bingo numbers selected by the player. (See DKT. 1, Ex. A, '646 patent, 11:1-5; 12:1-4.) Again, claims 14 and 20 add nothing patent-eligible to the claims. As explained with respect to claim 1, a human can perform this function by using a pencil to write the information recited in the claims. Claims 14 and 20 of the '646 patent add no patent-eligible subject matter to claims 13 and 19, respectively, from which they depend and, for the same reasons as explained above in detail with respect to claim 1, are invalid.

Dependent claims 15 and 21 of the '646 patent and dependent claim 25 of the '045 patent recite a method wherein the printed receipt has a receipt validation number and the receipt validation number is received by the computer or a second computer to obtain the Bingo card having a set of Bingo numbers selected by the player. (See DKT. 1, Ex. A, '646 patent, 11:6-10; 12:5-9; Ex. B, '045 patent, 13:25-30.) A human can perform this function using a pencil to write the recited information to include the receipt validation number before the cashier creates the Bingo card. Claims 15 and 21 of the '646 patent and 25 of the '045 patent add no patent-eligible subject matter to the claims from which they depend and, for the same reasons as explained in detail with respect to claim 1, are invalid.

Dependent claims 16, 22 and 27[2] of the '646 patent and dependent claims 4 and 26 of the '045 patent recite a method where the display is received by a portable terminal. (See

---

[2] Claims 26 and 27 of the '646 patent and claims 15 and 16 of the '045 patent are presented herein as additional and separately invalid under 35 U.S.C. § 101, even though these claims have already been held invalid under 35 U.S.C. § 112(b) (see *Planet Bingo, supra.* (DKT. 59)).

DKT. 1, Ex. A, '646 patent, 11:11-12; 12:10-11; 12:60-65; Ex. B, '045 patent, 9:46-51; 13:31-32.) Again, simply changing the configuration of a computer used to implement an abstract idea from a desktop to a portable configuration cannot be seriously deemed to add patent-eligible subject matter to the claims. For the same reasons applied to claim 1, claims 16, 22, and 27 of the '646 patent and claims 4 and 26 of the '045 patent are invalid.

Dependent claim 17 of the '646 patent and dependent claim 27 of the '045 patent recite a method where, after or during the game of Bingo, winning numbers are received and the set of Bingo numbers corresponding to the potentially winning control identifier are compared to the winning numbers to determine whether the winning set of Bingo numbers is a winning set of Bingo numbers. (See DKT. 1, Ex. A, '646 patent, 11:13-19; Ex. B, '045 patent, 13:33-39.) Again, the recited steps set forth in these claims may be readily practiced by a human engaged in mental processing. The verbs are "winning numbers are received" and "control identifiers are compared to the winning numbers." The claim recites the classic mental steps of seeing and thinking. For the reasons explained with respect to claim 1 above, these claims are invalid.

Dependent claim 18 of the '646 patent and dependent claim 28 of the '045 patent recite that the display of the set of Bingo numbers and the control identifier is a printer receipt wherein the printer receipt also includes a date of the game, the price for the set, and the numbers to be played in the game of Bingo and a computer identification number. (See DKT. 1, Ex. A, '646 patent, 11:20-15; Ex. B, '045 patent, 13:40–14:2.) Again, claims 18 and 28 add no patent-eligible subject matter. As explained with respect to claim 1, a human can perform this function by using a pencil to write the information recited in the claims. Claim 14 of the '646 patent and claim 28 of the '045 patent thus add no patent-eligible subject matter to claims 13

and 19, respectively, from which they ultimately depend, and, for the same reasons as explained above in detail with respect to claim 1, are invalid.

Dependent claim 23 of the '646 patent adds the step of erasing the control identifier from the computer memory. (See DKT. 1, Ex. A, '646 patent, 12:12-16.) Obviously, if it can be written with a pencil, it can be erased with an eraser. There is no patent-eligible subject matter added by claim 23, and, for the same reasons as set forth with regard to claim 1 above, claim 23 of the '646 patent is invalid.

Dependent claim 24 of the '646 patent and dependent claims 8 and 29 of the '045 patent recite the method including the additional steps of receiving an easy pick identifier and randomly generating a random set of Bingo numbers to be played in the game of Bingo in response to the easy pick identifier and deciding a control identifier for the random set of Bingo numbers, wherein the identifier for the random set of Bingo numbers is stored with the control identifier for the set of Bingo numbers to be played in the game of Bingo. (See DKT. 1, Ex. A, '646 patent, 12:17-28; Ex. B, '045 patent, 10:36-41; 14:3-15.) Claim 8 of the '045 patent does not include the second step of assigning a control identifier. For the same reasons set forth above with regard to claim 1, the steps of the aforementioned claims can be readily accomplished by a human with a pencil and paper and employing mental steps. Either of the player or the cashier is perfectly capable of mentally randomly generating a set of Bingo numbers to be played and either is certainly capable of writing an assigned control identifier for later reference. Again, for the same reasons as set forth above with regard to claim 1, the aforementioned claims add no patent-eligible subject matter and are invalid for the same reasons.

Claim 25 of the '646 patent and claims 9 and 30 of the '045 patent recite a method

including the additional steps of receiving an amount of buying points corresponding to the players, storing the amount of buying points in a computer-readable medium, assigning the player identifier to the buying points wherein one player identifier is assigned to the buying points and the preselected set of Bingo numbers corresponding to one player, retrieving the buying points along with the group having the preselected set of Bingo numbers corresponding to the player in step (d), subtracting from the amount of buying points a number of buying points corresponding to each of the Bingo numbers selected by the player to be played in the game of Bingo, displaying a new amount of buying points with the set of Bingo numbers to be played in the game of Bingo in one of the steps, and replacing the amount of buying points with the new amount of buying points in a computer-readable medium. (See DKT. 1, Ex. A, '646 patent, 12:29-54; Ex. B, '045 patent, 10:42-67; 14:16-42.) Each of the steps set forth in the claims at issue refer to a mental step or activity that could just as readily be accomplished by a human using a piece of paper and pencil. There is absolutely nothing in this claim that adds anything that must be performed by a computer. Compare *SiRF Tech.*, 601 F.3d at 1332 ("It is clear that the methods at issue could not be performed without the use of a GPS receiver") Here, a computer is simply not required to accomplish the objective of the claims. Thus, for the same reasons set forth above with regard to claim 1, VKGS respectfully submits that claim 25 of the '646 patent and claims 9 and 30 of the '045 patent are invalid under 35 U.S.C. § 101.

Dependent Claim 26 of the '646 Patent and claim 15 of the '045 Patent recite that the program enables selective retrieval by the player of at least one of a set of Bingo numbers stored in the memory of the computer. (See DKT. 1, Ex. A, '646 Patent, Col. 12, lines 55-59; Ex. B, '045 Patent, Col. 11, lines 53-57.) As set forth above, these claims add no patent-eligible subject

matter to the claims and for the same reasons with regard to claim 1, these claims are invalid.

Claim 2 of the '045 patent recites a computer system potentially having a second computer system with a second program that enables use of the validation number to receive an input from the set of Bingo numbers selected for play on the selected game of Bingo to be used by the player for the selected game of Bingo. (See Dкт. 1, Ex. B, '045 patent, 9:37-42.) Again, claim 2 adds nothing of patent-eligible subject matter to claim 1 of the '045 patent. Rather, humans using paper and pencil can readily accomplish the recited enabling use of a validation number to receive an output of the set of Bingo numbers. For the same reasons as set forth above with regard to claim 1, claim 2 is invalid.

Dependent claims 6 and 18 of the '045 patent recite verifying the winning set of Bingo numbers using a computer program. (See Dкт. 1, Ex. B, '045 patent, 10:28-30; 12:30-32.) As set forth above, the use of a computer program to accomplish steps which can just as readily be accomplished by humans with paper and pencil does not confer patent-eligible subject matter. For the same reasons as set forth above, VKGS respectfully contends that these claims are invalid.

Claim 16 of the '045 patent recites a system where a portable terminal is configured to be connected to the CPU to receive at least two of the sets of Bingo numbers preselected by the player and stored in the memory of the computer, and selectively retrieved by the player for playing in the selected game of Bingo. (See Dкт. 1, Ex. B, '045 patent, 11:58-63.) For the same reasons as set forth above, this claim adds no patent-eligible subject matter (and is also indefinite). The additional recitation of computer hardware provides no meaningful limit on the scope of the and is merely a mechanism for permitting a solution to be achieved more quickly.

See, *Dealertrack*, 674 F.3d at 1333.

Finally, dependent claim 22 of the '045 patent recites the method where an output of a verification of the winning set of Bingo numbers is printed by a printer. (See DKT. 1, Ex. B, '045 patent, 12:44-46.) Again, for the same reasons as set forth above, the additional use of a printer rather than a human using a piece of paper and pencil cannot, without more, add patent-eligible subject matter to the claim and this claim is invalid for the same reasons.

III.     **CONCLUSION**

For the foregoing reasons, Defendant again respectfully requests summary judgment that claims 1-27 of the '646 patent and claims 1-30 of the '045 patent are invalid as a matter of law under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

Respectfully submitted,

Dated: June 4, 2013                    s/Steven L. Underwood
                                                Steven L. Underwood (P60111)
                                                sunderwood@priceheneveld.com
                                                PRICE HENEVELD LLP
                                                695 Kenmoor Avenue S.E. |P.O. Box 2567
                                                Grand Rapids, Michigan 49501-2567
                                                T: 616.949.9610 |F: 616.957.8196